ICBC v. Blacksands

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of September, two thousand sixteen.

PRESENT: DENNIS JACOBS,
         BARRINGTON D. PARKER,
         DEBRA ANN LIVINGSTON,
                        Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
ICBC (LONDON) PLC,
         Plaintiff-Counter-Defendant
         -Appellee,

         -v.-                                    15-3387

BLACKSANDS PACIFIC GROUP, INC.,
         Defendant-Counter-Claimant-
         Appellant,

BLACKSANDS PACIFIC ALPHA BLUE, LLC,
         Counter-Claimant.

- - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**                    VIRGINA TENT (Christopher R. Harris, on the brief), Latham & Watkins LLP, New York, NY.

**FOR APPELLEE:**                     PAUL S. HESSLER (Charles T. Pollack, on the brief), Linklaters LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Blacksands Pacific Group, Inc. ("Blacksands") appeals from the district court's grant of summary judgment against it regarding its guarantee under a loan agreement. We review de novo a district court's grant of summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

On November 25, 2013, ICBC (London) plc ("ICBC"), Blacksands, and Blacksands's subsidiary Blacksands Alpha Blue, LLC ("Alpha Blue") entered into a bridge loan agreement ("BLA"). Pursuant to the BLA, ICBC provided a $20 million loan to Alpha Blue, which its parent company, Blacksands, guaranteed. Alpha Blue withdrew $5 million from this $20 million loan facility.

Under the BLA, Blacksands "absolutely and unconditionally" guaranteed the loan made by ICBC to Alpha Blue. Section 9.1 of the BLA states in pertinent part:

> The Guarantor hereby absolutely, unconditionally and irrevocably guarantees to the Lender the prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) of the Obligations strictly in accordance with the terms thereof. The Guarantor further agrees that if the borrower shall fail to pay in full when due any of the Obligations, the Guarantor shall immediately be liable for the same, without any demand or notice whatsoever, and

2

that if any extension of time is given for the payment of any of the Obligations, the same shall be promptly paid in full when due (whether at extended maturity, by acceleration or otherwise) strictly in accordance with the terms therof.

Section 9.2 reinforces or reiterates Blacksands's guarantee obligations, stating that they are:

absolute and unconditional, irrespective of the value, validity or enforceability of the obligations of the Borrower under this Agreement or any other Loan Document and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge or defense in favor of the Guarantor or the Borrower (other than payment in full of the Obligations), it being the intent of this Section 9.2 that the obligations of the Guarantor hereunder shall be absolute and unconditional under any and all circumstances.

Section 9.2 adds that:

the occurrence of any one or more of the following shall, to the fullest extent permitted by Applicable Law, not alter or impair the obligations of the Guarantor hereunder which shall remain absolute and unconditional as described above: . . . (b) any lack of validity or enforceability of any Loan Document or any other agreement or instrument relating thereto against any Obligor . . . .

In addition to these guarantee provisions, of the kind colloquially called ironclad, the BLA contains an integration clause, no-oral-amendment clause, and no-waiver clause.

The bridge loan matured on February 24, 2014. However, ICBC ultimately extended the maturity date in writing to July 31, 2014. When the loan was not repaid on the extended maturity date, ICBC sent Blacksands and Alpha Blue a letter notifying them of the default and demanding payment. When neither Blacksands nor Alpha Blue made payment, ICBC filed suit.

**1.**  Blacksands argues that repayment of the bridge loan was, and still is, not actually due because: (1) the BLA was supposed to roll over into a $70 million revolving credit facility ("RCF"), which ICBC never issued; (2) ICBC waived repayment until replacement financing could be obtained, which never happened; (3) ICBC breached the BLA by failing to negotiate the RCF in good faith; and (4) ICBC fraudulently induced Blacksands to enter into the BLA.

These arguments are without merit, as the district court held.  In a nutshell, although the BLA requires the parties to negotiate the RCF in good faith, the BLA is a standalone agreement that obligates Blacksands to repay the bridge loan at maturity regardless of any circumstances or defenses (other than payment in full).  The parties were allowed to amend the BLA, but any amendment had to be in writing, and Blacksands points to no writing that conditioned repayment on either the RCF being issued or replacement financing being obtained.  Nor does Blacksands offer any reason why oral representations allegedly made by ICBC should bar enforcement of its guarantee.

Blacksands argues fraudulent inducement; but that defense was waived in Section 9.2 of the BLA.  Under New York law, which governs the underlying contract dispute, Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 183 (2d Cir. 1998), a strongly worded guarantee, like the one at issue here, in a multimillion-dollar contract negotiated by sophisticated businesspeople forecloses a guarantor's fraudulent inducement defense.  See Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 95 (1985).  This Court's opinion in Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310 (2d Cir. 1993), is not to the contrary.  In Yanakas, we observed that certain facts -- not at issue here -- distinguished the guarantee from the one in Plapinger.  7 F.3d at 317.

Regardless of waiver, however, Blacksands offers no evidence to even support a fraudulent inducement defense.  See Kulak, 88 F.3d at 71 ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party

4

resisting the motion will not defeat summary judgment." (internal citation omitted)).

**2.** Next, Blacksands argues that the district court improperly granted summary judgment without first allowing discovery. We review the district court's denial of a request for time to conduct discovery pursuant to Fed. R. Civ. P. ("Rule") 56(d) for abuse of discretion. Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994).

Because Blacksands had agreed to litigate disputes regarding the bridge loan guarantee pursuant to N.Y. Civil Practice Law and Rules ("CPLR") § 3213's accelerated, pre-discovery procedure for summary judgment, when the case was removed to federal court, ICBC's summary judgment motion was submitted without discovery. Although Blacksands discussed the need to conduct discovery in its opposition to ICBC's motion, it failed to submit anything that amounted to a Rule 56(d) affidavit. "[T]he failure to file such an affidavit is fatal to a claim . . . even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law." Gurary v. Winehouse, 190 F.3d 37, 43-44 (2d Cir. 1999) (citing Paddington Partners, 34 F.3d at 1137). Moreover, Blacksands fails to show how discovery would lead to facts that might justify its opposition. Therefore, the district court did not abuse its discretion by deciding ICBC's summary judgment motion without first allowing discovery.

**3.** Finally, Blacksands argues that the district court erred by issuing final judgment on ICBC's summary judgment motion while Blacksands's surviving counterclaim remains pending. We review the district court's certification of partial summary judgment for abuse of discretion. Transp. Workers Union of Am., Local 100 v. N.Y. City Transit Auth., 505 F.3d 226, 230 (2d Cir. 2007).

The certification of a partial judgment is governed by Rule 54(b), which states in pertinent part:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are

5

involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

"Rule 54(b) provides an exception to the general principle that a final judgment is proper only after all claims have been adjudicated." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991). In order to properly grant Rule 54(b) certification, however, a district court must "offer a brief, reasoned explanation" of its decision. Id. Moreover, "the court should not enter final judgment dismissing a given claim unless that claim is separable from the claims that survive." Hogan v. Conrail, 961 F.2d 1021, 1026 (2d Cir. 1992) (internal quotation marks omitted).

The district court's Rule 54(b) analysis satisfies the "brief, reasoned explanation" requirement. As the district court pointed out, Blacksands's payment obligation under the BLA is entirely independent of its counterclaims against ICBC: regardless of the merits of those counterclaims, Blacksands has an "absolute and unconditional" obligation to repay the bridge loan. Thus, the district court did not abuse its discretion by granting Rule 54(b) certification.

Accordingly, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6